S. LANE TUCKER
United States Attorney

MAC CAILLE PETURSSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: mac.caille.petursson@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHANEY O'CONNOR,<br><br>Defendant. | No. 3:24-mj-00686-KFR |

### MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through undersigned counsel, hereby submits this memorandum in support of its request under 18 U.S.C. § 3142(e) and (f) for the Court to order Defendant Anthaney O'CONNOR detained pending trial. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay."). As explained below, the Defendant poses a significant danger to this community and a risk of non-appearance, and this Court should find that there are no conditions of release that can adequately mitigate these risks.

## I. FACTUAL BACKGROUND

In August 2024, Defendant, Anthaney O'Connor, reported another individual to the Air Force Office of Special Investigations (AFOSI), claiming that individual, an airman, wanted to commit sexual assaults against minors. In reporting the airman, O'CONNOR consented to a search of his phone, which revealed his possession of Child Sexual Abuse Material (CSAM), as well as his receipt of CSAM. O'CONNOR subsequently sent that CSAM to AFOSI.

Review of O'CONNOR's phone further revealed that he boasted about how he could turn innocuous photos of children in the community into Artificial Intelligence (AI)-generated CSAM. During an interview with law enforcement, O'CONNOR further admitted to distributing CSAM to others, besides law enforcement.

On December 18, 2024, O'CONNOR was charged by Complaint with one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).[1]

//

//

---

[1] As described herein, the investigation also revealed conduct that may support a charge of attempted sexual exploitation of a child, in violation of 18 U.S.C. 2252A(a)(7) and 18 U.S.C. 1466A—specifically, the transformation of surreptitiously taken photos depicting minors in the community into CSAM. Investigation remains ongoing but the government nonetheless believes that this uncharged conduct is relevant to the Court's pretrial analysis for detention in this case.

*U.S. v. O'Connor*
3:24-mj-00686-KFR                Page 2 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 2 of 17

## II. LEGAL STANDARD

The United States requests a detention hearing because the Defendant has been charged with a felony that "involves a minor victim." 18 U.S.C. § 3142(f)(1)(E). Pursuant to § 3142(g), the Court must determine whether there are any "conditions of release that will reasonably assure the appearance of [the Defendant] as required and the safety of any other person and the community." When making this determination, the Court should consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the Defendant's history and characteristics, and (4) the nature and seriousness of the danger to the community posed by the Defendant's release. *See* 18 U.S.C. § 3142(g). The government bears the burden of proving that the Defendant is a risk of flight by a preponderance of the evidence and that he is a danger to the community by clear and convincing evidence. *See United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

## III. ARGUMENT

When charged by Indictment, there is a presumption of detention based on the nature of the charges. 18 U.S.C. § 3142(e)(3)(E). However, when charged by Complaint, the Court has expressed in the past that the rebuttable presumption does not apply, therefore the Government may seek a short continuance to provide testimony if needed. Nonetheless, all four counts involve minor victims and are considered "crimes of violence" for purposes of 18 U.S.C. § 3142(f)(1)(A). *See* 18 U.S.C. § 3156(a)(4)(c) (defining "crime of violence" to include "any felony under chapter 109A, 110, or 117"). Of those, two charges —Distribution of Child Pornography (Count 1) and Receipt of Child Pornography (Count 2) — carry a rebuttable presumption in favor of pretrial detention

when charged by Indictment. 18 U.S.C. § 3142(e)(3)(E). If the Court finds that the rebuttable presumption does not apply when charged by Complaint, the Government must prove that there is no condition or combination of conditions will reasonably ensure the Defendant's appearance at trial or the safety of the community. 18 U.S.C. § 3142(e)(1).

Based on careful consideration of the factors enumerated in 18 U.S.C. § 3142(g), as further detailed below, the United States submits that there is no condition or combination of conditions that will reasonably assure the safety of the community or the Defendant's appearance should he be released pending trial.[2]

**A. The Nature and Circumstances of the Offense Charged**

Starting first with the nature and circumstances of the offenses, the alleged conduct is exceptionally serious. Indeed, O'CONNOR's child exploitation offenses have been designated by Congress as "crimes of violence" for which the appropriateness of detention is presumed as a matter of law.[3] Moreover, if convicted Receipt or Distribution of Child Pornography, O'CONNOR faces a mandatory-minimum sentence of five years imprisonment. The CSAM files O'CONNOR received, distributed and possessed include the youngest and some of the most helpless victims—toddlers as young as 1 year old— as well as bestiality, bondage, and sado-masochistic conduct in AI-generated CSAM form.

---

[2] The United States is not aware of any proposed release plan at this time. Nor has the United States received the Pretrial Services Report (PTSR) in this case. The United States will make further argument regarding the Defendant's history and risks if released at the arraignment and detention hearing, if necessary, after review of the PTSR and consideration of any release proposal.

[3] *All* federal child pornography offenses are classified under the bond statutes as crimes of violence, *see* 18 U.S.C. § 3156(a)(4)(C), and all but simple possession carry a presumption of detention, *see* 18 U.S.C. § 3142(e)(3).

*U.S. v. O'Connor*
3:24-mj-00686-KFR    Page 4 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 4 of 17

And in his quest to satisfy those sexual desires, O'CONNOR advertised his abilities to turn innocuous photos of children in the community into CSAM. Through his actions, O'CONNOR contributed to the continued victimization of the real children depicted in those images, and he fueled the demand for more heinous content.

Notably, O'CONNOR continued this heinous conduct after law enforcement searched his cell phone and found CSAM, CSAM that he showed them he had on his phone and that he later sent to law enforcement.

This factor weighs in favor of detention.

**B. The Weight of the Evidence**

The evidence against O'CONNOR is strong and primarily based on preliminary forensic review of his devices, which were searched pursuant to consent in August 2024, and subsequently seized pursuant to search warrants, in December 2024. O'CONNOR's devices contained hundreds of images and videos depicting contraband of minors.

First, during a review of O'CONNOR's phone, law enforcement reviewed the text messages sent between O'CONNOR and the airman and discovered the airman sent two images of CSAM to O'CONNOR that O'CONNOR possessed on his phone in August 2024. The two images are described as follows[4]:

    **a.**    One image depicted a naked grown man laying down with a large erect penis. Lying on top of the man is a naked young boy whose age seemed approximately five to seven years old.

---

[4] Law enforcement does not have evidence that the Defendant is pictured in these images, however extensive investigation and review of all his devices is still ongoing.

*U.S. v. O'Connor*
3:24-mj-00686-KFR             Page 5 of 17

**b.** The second image depicted the upper part of a shirtless young boy, whose age seemed approximately five to seven years old, who had his face near what appeared to be a grown man's testicles and erect penis.

Prior to reporting to AFOSI, O'CONNOR sent a text message to the airman on August 12, 2024, with images of a virtual reality world he was creating on his computer. O'CONNOR indicated that he could make CSAM "VR POV" material from the pictures the airman surreptitiously takes of young boys in the local community. VR POV stands for virtual reality point of view, meaning it refers to a perspective in a virtual reality environment where you see the scene as if you were directly experiencing it yourself. O'CONNOR's messages are depicted in blue below:



O'CONNOR further told the airman that he is not into real children, just drawings depicting child sexual abuse material. O'CONNOR's messages are depicted in blue below:

*U.S. v. O'Connor*
3:24-mj-00686-KFR        Page 6 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 6 of 17



In those messages, O'CONNOR refers to "cheese pizza". Law enforcement knows the term "cheese pizza" to be commonly used by individuals seeking sexually explicit material depicting minors.

Additional review of O'CONNOR's phone revealed that on August 13, 2024, O'CONNOR stated to another individual that he had a problem, but not as bad as the airman, because he was only into "drawings." O'CONNOR then sent a cartoon image to another individual of a female with her breast partially exposed, wearing thong underwear and buttocks partially exposed. O'CONNOR's messages are depicted in blue below with redactions on the image:

//

//

//

//

//

*U.S. v. O'Connor*
3:24-mj-00686-KFR                    Page 7 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 7 of 17



Law enforcement observed that the airman sent O'CONNOR a picture of a fully clothed prepubescent boy sitting in a grocery cart in Costco. The airman had surreptitiously taken the photo and sent it to O'CONNOR with the caption "I seen a blonde the other day, got his picture. He was super fucking adorable." O'CONNOR and the airman discussed how they could use the photos the airman takes of children in a virtual reality setting where they could create CSAM. Messages between O'CONNOR (in blue) and the airman (in grey) are depicted below:

//

//

//

//

*U.S. v. O'Connor*
3:24-mj-00686-KFR  Page 8 of 17



*U.S. v. O'Connor*
3:24-mj-00686-KFR  Page 9 of 17
Case 3:24-mj-00686-KFR   Document 8   Filed 12/23/24   Page 9 of 17



Further review of O'CONNOR's phone revealed additional CSAM material that O'CONNOR did not previously disclose to law enforcement when reporting the airman. During extraction of his cellphone, three images were recovered as carved. Carved refers to a technique called "file carving" in digital forensics, where the data is recovered directly from the raw bytes on the disk without relying on the file system metadata, typically used to find deleted or hidden images that might not be visible through normal means. O'CONNOR's phone contained approximately six AI/Cartoon drawings/images depicting CSAM, four CSAM images and two videos containing CSAM.

//

//

//

//

//

//

//

*U.S. v. O'Connor*
3:24-mj-00686-KFR            Page 10 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 10 of 17

One of the CSAM videos O'CONNOR possessed and received from the airman via an APPLICATION A[5] link in August 2024 was approximately 57 seconds in length and depicted various folders consistent with known CSAM labels. CSAM is briefly displayed throughout the video. Names of the folders containing visible CSAM included rape, CP, teens, deep web pedo, SnapChat girls, young girls alone and incest.

Another CSAM video O'CONNOR possessed on his phone was approximately 25 seconds in length and depicted two prepubescent males, naked, preforming manual sex on one another. The four images O'CONNOR possessed on his phone displaying CSAM appear to be still images from that CSAM video.

A review of the AI CSAM O'CONNOR possessed on his phone included but not limited to: a naked toddler with an adult male penis ejaculating on a toddler's back, a prepubescent female with an adult male penis in her mouth, and a prepubescent naked female with her vagina exposed.

On August 13, 2024, O'CONNOR stated to a another individual that the airman had shared more images, but he dared not save, however based on the review completed at that time of O'CONNOR's phone it is apparent additional images were retained.

---

[5] The name of Application A is known to law enforcement but anonymized in this affidavit to protect operational security. Application A remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter the application will be identified herein as "Application A".

*U.S. v. O'Connor*
3:24-mj-00686-KFR    Page 11 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 11 of 17

Pictured below are messages sent in blue by O'CONNOR to another induvial and contain a gallery of non CSAM photos the airman had sent to O'CONNOR.



On December 19, 2024, FBI Anchorage executed a federal search warrant at O'CONNOR's residence. A limited manual review of O'CONNOR's computer was conducted on scene and revealed O'CONNOR was in possession of a CSAM video approximately 41 seconds in length that depicted an adult male having anal sex with a prepubescent boy. An additional CSAM image was reviewed on his computer and appeared to resolve back to APPLICATION A link labeled "Teen [unreadable] ages 5-17." That image depicted a nude adult female between the legs of a prepubescent girl, who is nude from the waist down. Law enforcement also observed AI images/anime clearly showing prepubescent children depicted in child sexual abuse material. Further review is still ongoing.

On December 19, 2024, O'CONNOR consented to an interview and stated he mainly downloaded AI generated CSAM images but claimed he unintentionally downloaded "real" CSAM sometimes. However, O'CONNOR admitted to coming back to these images for sexual gratification time and time again. O'CONNOR claimed he would report the live CSAM to Internet Service Providers,

*U.S. v. O'Connor*
3:24-mj-00686-KFR  Page 12 of 17
Case 3:24-mj-00686-KFR   Document 8   Filed 12/23/24   Page 12 of 17

but still was sexually gratified from the images and videos. O'CONNOR admitted he downloaded CSAM and would distribute it via texts with friends. O'CONNOR admitted to downloading CSAM as recently as the day before the search warrant, December 18, 2024.

O'CONNOR further admitted to possessing amounts of images and videos in the 60+ GB range. According to law enforcement, in 60 GB, one can hold between 12-300,000 images and up to 10-20 hours of high-definition videos. Law enforcement also noted that most of the CSAM videos O'CONNOR possessed were 20 to 60 seconds long and were poor quality definition.

Execution of the search warrant on December 18, 2024, also revealed that O'CONNOR hid two electronic storage devices and a computer hard drive in the vents of his bedroom closet. In addition to the hidden electronics, multiple phones and computer drives were found within O'CONNOR's bedroom. The contents of those items are pending review.

Based on what law enforcement observed during the most recent search and O'CONNOR's own admission thus far, this is merely the tip of the iceberg in terms of evidence discovered. Hundreds upon hundreds of images and videos were found stored on O'CONNOR's devices, saved across various applications and in numerous folders. The evidence shows that O'CONNOR continued to possess, received, and distribute CSAM after reporting the airman's distribution of CSAM to him in August 2024. O'CONNOR's apparent interest and ability to turn photos of children in the community into AI CSAM, and admitted distribution of that material, is particularly alarming.

*U.S. v. O'Connor*
3:24-mj-00686-KFR          Page 13 of 17
Case 3:24-mj-00686-KFR   Document 8   Filed 12/23/24   Page 13 of 17

This factor weighs in favor of detention.

**C. The History and Characteristics of the Defendant**

O'CONNOR has a criminal history involving a driving under the influence manslaughter, violating conditions of release, and harassment from 2019 and 2020. Moreover, O'CONNOR continued to engage in this conduct after he reported the airman's conduct in August 2024, resulting in the search and extraction of his cell phone which contained CSAM. Based on O'CONNOR's own admissions, he has been engaging in this type of illicit conduct for years. This was merely the first time he was caught for this conduct. That O'CONNOR has engaged in this conduct for years demonstrates his underlying sexual interest in children.

This factor weighs in favor of detention.

**D. The Nature and Seriousness of the Danger to the Community that Would Be Posed by the Defendant's Release**

O'CONNOR poses a serious risk to the community. Not only did he distribute CSAM to others, but he boasted about his abilities to transform innocuous photos of children in his community into AI-generated CSAM. Furthermore, during the execution of a search warrant of O'CONNOR's residence, several other individuals appeared to reside in the dwelling. Some those individuals admitted to being previously convicted of child exploitation related offenses.

Based on law enforcements conversations with O'CONNOR, he appears to be unemployed, has trouble holding down jobs, has a history involving alcohol abuse, and while he claimed to have family in the area, he admitted he has no close ties to his family

*U.S. v. O'Connor*
3:24-mj-00686-KFR     Page 14 of 17
Case 3:24-mj-00686-KFR     Document 8     Filed 12/23/24     Page 14 of 17

or to the community. O'CONNOR also admitted to law enforcement that he actively distributes CSAM to his current boyfriend and that they have sexual relations together involving CSAM.

While O'CONNOR may have expressed that he is only into "drawings", he has actively solicited photos of real children in the community and advertised his abilities to turn those images into CSAM, or drawings, that depict real children engaged in sexually explicit conduct, which is a serious crime. There is incalculable harm in O'CONNOR's willingness and ability to transform photos of known children in the community into AI-generated CSAM for his own pleasure, as well as to distribute to others. O'CONNOR's ability to hide numerous devices also suggest that a mere prohibition from his use of a computer or cell phone will not suffice in deterring him from accessing such devices, especially given how ubiquitous such devices are, and how easy it is to conceal them.

Thus, while computer monitoring may address the danger posed by less sophisticated offenders, the record here depicting carved images, computer sophistication that enables O'CONNOR to turn photos of children in the community into CSAM, and his ability to hide such devices, provides ample reason to conclude that O'CONNOR can evade court-ordered restrictions and would continue to pose a serious danger if released.

This factor weighs inf favor of detention.

## IV. CONCLUSION

By his own admissions, O'CONNOR broke the law for years with impunity and operated without detection from those around him. Were he to be released, he would return to the same circumstances in which he was able to offend for years—an environment in

*U.S. v. O'Connor*
3:24-mj-00686-KFR                Page 15 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 15 of 17

which he lives with others previously convicted of child sexual exploitation offenses and access, even if prohibited, to devices that could allow him to continue transforming images of countless children in the community into AI generated CSAM that fit his CSAM preferences and that he could continue to share with others.

Even the most restrictive sets of release conditions require a defendant's good faith compliance in order to be effective. *See Hir*, 517 F.3d at 1092 (citing *United States v. Tortora*, 922 F.2d 880, 886 (1st Cir. 1990)). O'CONNOR's longstanding sexual interest in children, combined with his ongoing course of conduct for which he has evaded accountability until very recently, gives little basis to conclude that the Court can expect to see such good faith compliance here. And if O'CONNOR were to reoffend while on pretrial release, not only would the harm caused by such recidivist conduct likely be severe, but it would be inflicted on the most vulnerable members of his community—minor children. Given the serious nature of O'CONNOR's conduct and the penalties he faces if convicted, there are no conditions that would ensure his appearance in court or the protection of the community if he were to be released.

//
//
//
//
//
//
//

*U.S. v. O'Connor*
3:24-mj-00686-KFR            Page 16 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 16 of 17

Accordingly, the Defendant should be detained pending trial pursuant to 18 U.S.C. § 3142(e).

RESPECTFULLY SUBMITTED December 23, 2024 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ *Mac Caille Petursson*
MAC CAILLE PETURSSON
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024 a true and correct copy of the foregoing was served electronically on all counsel of record.

*s/ Mac Caille Petursson*

*U.S. v. O'Connor*
3:24-mj-00686-KFR            Page 17 of 17
Case 3:24-mj-00686-KFR    Document 8    Filed 12/23/24    Page 17 of 17